UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. DIBBLE,

    Plaintiff,

v.                                   Case No. 1:06-CV-179
                                   Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on March 21, 1958 and has a high school education (AR 59, 204).[1] Plaintiff alleges that he suffered a disabling injury on January 24, 2004 (AR 59, 204). He had previous employment as maintenance man (AR 76, 204). Plaintiff identified his disabling conditions as degenerative disc disease, herniated disc at right L3-4, 2-level degenerative spondylolisthesis, and Scheuermann's disease[2] (AR 104). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Alanson Mason, M.D., the medical expert at plaintiff's hearing, testified that Scheuermann's disease is "a degenerative process that causes wedging of the vertebra. But it is not an active disease in adult life. It's just a structural change in the shape of the vertebra, and once they're adults it's no longer a problem as far as symptoms are concerned" (AR 225).

September 17, 2005 (AR 12-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 20).  Second, the ALJ found that he suffered from severe impairments of degenerative disc disease of the lumbar spine, herniated disc at L3-4, and 2-level spondylosthesis (AR 20).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).  The ALJ specifically rejected plaintiff's claim that he disabled under Listings 1.04A and 1.04C (AR 14).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift 5 pounds continuously; lift/carry six to 10 pounds frequently; lift/carry 20 pounds occasionally; sit one hour at a time; stand one hour at a time; walk one hour at a time; sit four hours per eight-hour day; stand/walk four hours per eight[-]hour day; can use his hands without limitation; cannot perform repetitive movements with his right foot; can occasionally bend, squat, crawl, climb and crouch; is moderately restricted from working at unprotected heights; and is mildly limited from driving.

(AR 20).

The ALJ found that plaintiff could not perform his past relevant work as an industrial maintenance mechanic (AR 20).  The ALJ also found that plaintiff's allegations of disabling pain, fatigue, and limitations were not totally credible (AR 20).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of sedentary work (AR 20-21). The ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform, including the following sedentary jobs in Michigan: assembler (2,700 jobs); visual inspector (1,300 jobs); and sorter (3,600 jobs) (AR 21).  In addition,

plaintiff could perform the following sedentary jobs in Michigan with the use of a cane: self service parking lot attendant (900 jobs); information clerk (3,200 jobs); and security system monitor (1,500 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 22).

## III. ANALYSIS

Plaintiff raises three issues on appeal.[3]

### A. Did the ALJ err when she failed to find that plaintiff's back condition met or equaled Listing 1.04 A or C?

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d).

A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or

---

[3] In his reply brief, plaintiff raises an additional issue that "[t]he ALJ misjudged the Plaintiff's credibility because she did not apply the procedure mandated by SSR 96-7p." Plaintiff did not identify this issue as an error in his original brief as required by the court's order directing filing of briefs. Accordingly, the court considers this issue waived.

equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Here, plaintiff contends that he met the requirements of 1.04A and 1.04C.[4] Listing 1.04 states as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The "inability to ambulate effectively" as defined in § 1.00B2b is as follows:

---

[4] In his brief, plaintiff erroneously referred to these as Listings 1.02A and 1.02C.

> b. What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Pt. 404, Subpt. P, App. 1.

The ALJ rejected plaintiff's claim that he met the requirements of Listing 1.04 A and 1.04C:

> At step three of the sequential evaluation, no physician has opined that claimant's impairments, singly or in combination, meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, and the State Agency physicians specifically opined that it does not. The undersigned has considered Listing 1.04A and C as argued by counsel, but as testified to by Dr. Mason, the record shows there are no neurological deficits [AR 141] or muscle weaknesses [AR 137]. In addition, the claimant has not demonstrated the inability to ambulate ineffectively. Although he uses a cane that Dr. Mason indicated was not prescribed by a doctor [AR 89], the inability to ambulate effectively requires the use of an assistive device(s) that limits the functioning of *both* upper extremities.

7

(AR 14) (emphasis in original).

The ALJ relied on the testimony of the medical expert (ME), Alanson Mason, M.D. (AR 219-29) and three other portions of the medical record to support her conclusion (AR 89, 136-37, 140-42). After reviewing the medical record, Dr. Mason, a board certified orthopedic surgeon, testified that plaintiff did not meet the requirements of either Listing 1.04A or C "because of the lack of neurologic findings" (AR 13, 220). Bharti Sachdev, M.D., examined plaintiff for the DDS and found no neurological deficits (AR 140-42). Dr. Mason noted that Dr. Sachdev found no asymmetry of strength or reflexes in his neurological examination (AR 140-42, 220). James S. Bassett, Jr., M.D., treated plaintiff at a pain center (AR 136-37). Dr. Bassett found that while plaintiff's lower left extremities were normal, he had "give/go weaknesses in all muscle groups" of the right lower extremity (AR 137). The ME summarized the findings of Dr. Bassett as follows:

> So we have no significant or major neurologic changes as a result of his spinal [INAUDIBLE] lower extremity. He did make note of the fact that the patient walked with flexed lumbosacral spine and he brought a cane for support. And that's pretty much it.

(AR 221). The ME also noted that one of plaintiff's treating physicians, Daniel J. Sullivan, M.D., made no objective findings in his neurological examination (AR 220). Finally, the record reflects that while plaintiff stated in his DDS "Function Report" that he uses a cane "to walk anywhere," he admitted that the cane was not prescribed by a doctor (AR 89).

In his reply brief plaintiff apparently limits his arguments to Listing 1.04A. Plaintiff's MRI indicates the existence of nerve root compression (AR 129). To meet the requirements of Listing 1.04A, the nerve root compression must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there

8

is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Plaintiff states that he has demonstrated a limitation of motion of the spine and motor loss because: Drs. Sullivan and Bassett observed his "hunched over" walk; Dr. Sullivan found a positive straight leg raising maneuver; and Dr. Bassett noted a diminished patellar reflex and a "questionably positive SLR [straight leg raising] which suggests nerve root irritation." Plaintiff's Brief at 3.

Neither Dr. Sullivan, Dr. Bassett, nor any other treating or examining physician addressed whether plaintiff's condition met the requirements of Listing 1.04A. Dr. Mason, the ME, reviewed the medical record and concluded that plaintiff did not meet the neurologic findings necessary to meet the listing. Based on this record, the ALJ could properly rely on the ME's testimony that plaintiff did not meet the requirements of the listing. "The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment." *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996). *See* 20 C.F.R. § 404.1527(e)(2), (f) (the Commissioner considers medical opinions to determine whether a claimant's impairment meets or equals the requirement of any listed impairment, including those made by medical experts consulted at administrative hearings); *Walker v. Barnhart*, 72 Fed. Appx. 355, 357 (6th Cir. 2003) (ALJ could rely on the opinion of a medical expert that the claimant did not meet a listing). *See generally, Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 570 (6th Cir. 1989) ("[w]hile the Court recognizes that [the medical expert] did not actually treat or physically examine the claimant, his opinion was based upon the objective evidence of medical reports made by the claimant's treating physicians and testimony given by the claimant himself").

> **B.    Did the ALJ fail to comply with 20 C.F.R. § 404.1527 in not according adequate weight to the opinion of the claimant's treating physician and thereby overestimating plaintiff's RFC?**

Next, plaintiff contends that the ALJ failed to give adequate weight to the opinions of his family physician, Troy Davis, M.D. Plaintiff's Brief at 14. [5] A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

---

[5] In his initial brief, plaintiff contends that the ALJ also failed to give controlling weight to the opinions expressed by physical therapist Robert Essex. Plaintiff's Brief at 14. In his reply brief, plaintiff concedes that opinions expressed Mr. Essex are not entitled to controlling weight under the regulations. Reply Brief at 6.

In his "medical source statement," Dr. Davis candidly stated that various aspects of plaintiff's condition were unknown or non-existent. The doctor gave only two objective medical findings: "MRI shows herniation. [P]atient uses cane. Otherwise no findings" (AR 175). The doctor described plaintiff's symptoms as "Back pain with numbness right leg" (AR 175). He characterized plaintiff's pain as "Right leg, back, variable" (AR 175). When asked to describe plaintiff's prognosis, the doctor stated "Unknown - not yet fully worked up" (AR 175). When asked to describe plaintiff's "treatment and response, including any side effects of medication which may have implications for working," Dr. Davis stated "Still early, patient has not seen specialist" (AR 175). When asked if plaintiff was a malingerer, the doctor stated "Unknown. Too early to tell" (AR 175). Dr. Davis stated that no emotional factors contributed to the severity of plaintiff's symptoms and functional limitations (AR 175). Finally, the doctor found that no psychological conditions affected plaintiff's physical conditions (AR 175).

After acknowledging these limitations, Dr. Davis offered the opinion that plaintiff "often (50%)" experienced pain or other symptoms severe enough to interfere with attention and concentration (AR 176). While the doctor concluded that plaintiff had "moderate limitations (50%)" to deal with work stress, he qualified this conclusion by stating that it was "too early to tell" (AR 176). When asked how many city blocks plaintiff could walk without rest or severe pain, the doctor responded "Unknown as of yet" (AR 176). Nevertheless, the doctor stated that plaintiff could continuously sit for 30 minutes, stand for 50 minutes, sit for less than 2 hours in an 8-hour workday, stand for less than two hours in an 8-hour workday, and that he needs to "walk" for four hours in an 8-hour workday (AR 176). While the doctor concluded that plaintiff could occasionally lift 20 pounds and frequently lift less than 10 pounds, he qualified his answer, stating "Not yet treated for

conditions, presently has problems" (AR 177). Finally, when asked to describe plaintiff's other limitations, Dr. Davis stated, "At present complicated to say, patient has not finished work up and treatment for condition" (AR 178).

> The ALJ addressed Dr. Davis' opinions as follows:
>
> The undersigned has carefully considered Dr. Davis' opinions that the claimant can sit for only 30 minutes at a time, sit less than two hours a day, stand/walk less than two hours a day, has pain severe enough to interfere with concentration and attention 50 percent of the time, and would miss three days of work per month (Exhibit 9F). However, his opinions are not well supported; the limitations are not backed by citations to medical signs and laboratory results as required by SSR 96-4p. Indeed, Dr. Davis included "it is too early to tell" when asked to describe the claimant's response to treatment, and could not provide a prognosis indicating the claimant is not fully worked up. Dr. Davis wrote that it is too early to tell if the claimant is a malingerer, which indicates that he has not obtained a sufficient longitudinal picture of the claimant's condition as required by 20 C.F.R. 404.1527(d). He is a family practitioner, and it does not appear that Dr. Davis is familiar with the Commissioner's regulations for evaluating disability. Dr. Mason testified that whether the claimant would experience a concentration loss of 50 percent depends on the medication used and the person taking them; moreover, he did not agree that the claimant would miss three or more days of work per month. Dr. Davis' opinions are inconsistent with the record as a whole. For clear and convincing reasons, the undersigned finds Dr. Davis' opinions are neither persuasive nor controlling (20 CFR § 404.1527(d) and SSR 96-2p).

(AR 17).

The ALJ articulated good reasons for not crediting the opinions of Dr. Davis. *See Wilson*, 378 F.3d at 545. Dr. Davis candidly stated that his opinions were based on insufficient experience in treating plaintiff. The doctor's lack of an established history of treating plaintiff undercuts the rationale of the treating physician doctrine, which "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined

12

a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Accordingly, the court concludes that the ALJ could properly discount Dr. Davis' opinions.

### C. Did the ALJ err when she failed to accord any medical weight to the opinions of the physical therapist formed after a 3-hour functional capacity assessment?

Finally, plaintiff contends that the ALJ failed to give any weight to Physical Therapist Robert Essex's functional capacity assessment, which indicated that plaintiff "passed 92% of the validity tests" and that he "has substantially lost the ability to perform regular, continuous and competitive employment." Plaintiff's Brief at 18. The court disagrees with plaintiff's contention.

Mr. Essex performed a functional capacity evaluation of plaintiff on January 20, 2005 (AR 166-72). The ALJ addressed this evidence as follows:

> The Administrative Law Judge has also considered physical therapist Robert Essex's opinions that the claimant can stand for only 30 minutes at a time, needs four 10 to 30 minute breaks per day, would miss three or more days of work per month, would be a very unreliable employee due to his condition and medication use, and as indicated in Mr. Essex's January 20, 2005 functional capacity evaluation report (Exhibit 7F). While Mr. Essex writes that he performs functional capacity evaluations at the request of nine physicians in the Lansing area, he is not an acceptable medical source (20 CFR 404.1527(d)(1). Consequently his information is considered as that of a lay witness. Dr. Mason testified that he does not rely upon functional capacity examinations done by physical therapists and that it is not accepted custom and practice to do so. A review of Mr. Essex's information reveals that it is based in large part upon the claimant's subjective reports of pain and his own description of his limitations. It is inconsistent with the record as a whole, including the conclusions of the State Agency consultants and the testimony of a board certified orthopedic surgeon, both of whom are familiar with the Commissioner's regulations for evaluating disability. Consequently, the undersigned will give it little weight.

(AR 17).

Pursuant to 20 C.F.R. § 404.1513(a), the Commissioner needs evidence "from acceptable medical sources to establish whether you have a medically determinable impairment(s)." "Acceptable medical sources" are defined as: licensed physicians; licensed or certified psychologists "for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only;" licensed optometrists "for the measurement of visual acuity and visual fields;" licensed podiatrists "for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle;" and, qualified speech-language pathologists "for purposes of establishing speech or language impairments only." 20 C.F.R. § 404.1513(a). Under the regulations, "medical opinions" are defined as "statements from physicians and psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* at § 404.1527(a)(2).

In addition to evidence from these "acceptable medical sources," the Commissioner "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." *Id.* at § 404.1513(d). Such other sources include: medical sources not listed as "acceptable medical sources" (e.g., nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists); educational personnel (e.g., school teachers, counselors, early intervention team members, developmental center workers and daycare center workers); public and private social welfare agency personnel; and "other non-medical sources" (e.g., spouse, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy). *Id.* However, such evidence is not entitled the weight given to the opinions of doctors. *See Shontos v. Barnhart*, 328

14

F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, No. 00-1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source); *Walters*, 127 F.3d at 530 ("logic and the plain language of the regulations suggest that a treating source under 20 C.F.R. § 404.1527(d)(2) must be a *medical* source and that a chiropractor is not a medical source").

The ALJ properly considered Mr. Essex's opinions as evidence from "other" medical source and determined to give those opinions "little weight." It is the ALJ's function to resolve conflicts in the evidence. *See King*, 742 F.2d at 974. Accordingly, the ALJ did not err in evaluating Mr. Essex's opinions.

**IV.    Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.

Dated: January 10, 2007             /s/ Hugh W. Brenneman, Jr.
                                    Hugh W. Brenneman, Jr.
                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).